Herrera-Martinez v. Garland, No. 2014-23. Thank you, Your Honor. May I please report? My name is Crystal Swensboe on behalf of Appellant Mr. Walter Herrera-Martinez. I have reserved five minutes for rebuttal today. Your Honor, Mr. Herrera-Martinez is entitled for holding at the Google as a member of a particular social group of prosecution witnesses. Specifically, the witness who reported harassment to the police was made public by the Honduran police and then targeted with threat and violence by narco traffickers as a result of his report. I'm sorry, counsel, that's not the PSG you described in your brief. Could you point me to where that definition is in your brief? Your Honor, we discuss it as the second issue presented in the brief. We use prosecution witnesses as kind of an overarching term. Certainly, this is what was used in the 9th Circuit and when the 4th Circuit has spoken about it. But in each of those cases, the court has required a bit more detail in terms of defining the particularized group, which is what I'm attempting to do here. Right. So on page 21 of your brief, you define prosecution witness as Honduran citizens who make reports to the police about the unlawful activities of narco traffickers to facilitate prosecution. That's my understanding of your definition of prosecution witness. Is that correct? Yes, Your Honor. I apologize for any confusion. I'm simply tying into the facts of the case as well as the persecution point. I can't hear you very well. It's sort of muted. Oh, I apologize. Can you do anything about that? I can attempt another microphone. I will try that right now. If not, I will simply try to speak a bit louder. Okay. Thank you. With respect to Judge Coylebone, did you have a question as well? No. No, I'm good for right now. Thank you. Okay. Your Honor, in addition to the withholding of removal claim, Mr. Herrera-Martinez is also entitled to protection under the Convention Against Torture or CAT for several different reasons, which I'm happy to get into a little bit. But first, with respect to withholding removal claim, we would note as an overarching point, the government has forfeited any opposition to withholding of removal by failing to address it on appeal. Mr. Herrera-Martinez, in this case, is part of the particularized social group, as Judge Rushing has mentioned. With specific facts here, witnesses who report the harassment by narco traffickers aid the police. And in this case, Mr. Herrera-Martinez was made public by the police. I'm still having trouble hearing you. So, I think this is an important issue. And when you get back to us, I think the government makes, I think the government's position must be, because your client was found not credible, we can't look at any of this other evidence about a particular social group. So maybe you can, I mean, I think that's where they're going. I take it that you say that they forfeited the argument. But I think that they say, since he's not credible, the judge didn't have to believe that. Your Honor, we do understand that the government mentioned credibility in their arguments. However, the IJ and the board did not rely on credibility in determining the particularized social group here. The facts found by the IJ were not contrary to Mr. Herrera-Martinez's testimony. And the IJ stated in the withholding decision that his ruling went beyond credibility. And further, this court has held that credibility is not determinative of a non-discretionary withholding of removal claim. That's from the Singh v. Holder case in 2012, where they affirmed the credibility ruling but went on to determine whether withholding of removal was nonetheless appropriate. So, counsel, I want to go back to your particular social group and make sure I without more definition. And it sounds like you're saying something that has more information now. Individuals who file complaints against narcos, I may have misstated a little bit, but you don't seem to be talking about prosecution witnesses generally. First of all, is that correct? Your Honor, we believe prosecution witnesses are an appropriate PSG, as suggested by 4th Circuit law, as well as the other circuits that have considered this question. However, to be specific to Mr. Herrera-Martinez's position, we feel that we need to discuss the facts and how I just want to go step-by-step in this. So, if you're claiming that prosecution witnesses generally are sufficient, of course, we have the author of the opinion, I think, on our panel that deals with a similar topic, but there was a strong emphasis, it was clear the witness had testified. You seem to be saying now prosecution witnesses can be someone who files a complaint as well, and so I'm trying to figure out if the group is prosecution witnesses or something else, because if it's prosecution witnesses generally, it seems to me to raise questions about whether that means someone who's testified, or someone who's filed a complaint, or someone who's agreed to testify, or someone who's identified someone in a lineup, or countless other sort of ways, which seem to beg the question of who's in and who's out, and so it's important, to me at least, to understand what specifically your PSG is. Certainly, Your Honor. The prosecution witnesses, and we use that term because that is what the Fourth Circuit has looked at, but in that there is a key kind of factual distinction between a witness who submits a secret complaint to the police versus one who is made public. We would argue that there is no distinction, no effective distinction, between a witness who reports to the police and then is made public by the police, either by being compelled to testify or by being outed to the very tormentors that they are reporting about, and that's why we have in this case that factual nexus for Mr. Herrera-Martinez. Much like a prosecution witness, he went to the board, adopted that, the police then went and told the narco-traffickers about that report. So, he was brought into public light, much like a witness. A witness would be in a traditional prosecution. Well, can I... Sorry, go ahead. No, go ahead, Judge Monks. I was just going to ask you about this matter of HLSA, BIA case, and they said, and the board said there, the BIA has held that cooperating with law enforcement in a public manner, particularly testifying in public proceedings, is sufficient to establish a valid social group if there is evidence that society in question recognizes and provides protection for such conduct. Okay, so it doesn't seem that testifying is necessary if you do this cooperation with law enforcement in a public manner. Now, I wasn't sure from your response to Judge Cladobaum if you... Is your definition the same as the BIA's definition? Your Honor, we would accept the BIA's definition in that point, but note that HLSA has several legal infirmities, particularly with discussion of the public aspect. The Third Circuit, the Seventh Circuit, the Second Circuit have not required the type of publicity that HLSA discusses, and we would, in fact, urge this court to look to the Third Circuit's opinion in Housman or Arellano, where the individual submitted a report to the police, and he was made public because individuals saw him speaking to the police in front of his own home. That was the level of Mr. Herrera-Martinez was made public by the police, much like he would be in a traditional prosecution setting. He didn't testify, is that right? That's correct, Your Honor. There was no... And he didn't publicly... There's no publicly knowing that he reported until the police made that public, is that right? Yes, Your Honor, that's correct, and that's what we would ask the court to adopt here. Your Honor, we would also note that the particularized social group in this case is socially distinct within society, with regard to Judge Mott's earlier question. It's regarded as distinct within Honduras because, as we noted in the record, whether it was the UNHCR report, page 889, prosecution witnesses are specifically targeted for violence in Honduras, and Honduras has created a law to protect those witnesses. So... So, but counsel, first of all, is, I mean, I don't think the board ever addressed social distinction. So, it seems to me with withholding, and correct me if I'm wrong on where we are with that issue, the board found that it was not particular in its second opinion, and that was never addressed again. So, if we're... And IJ didn't address withholding in its following opinion, and then the board didn't address that either. So, it seems to me we need to assess the particularity issue, and if we agree with the board, yeah, I suspect you lose on that. If we disagree, you know, I think of social distinction. Do you disagree with that? Yes, your honor. The issue of a particularized social group, and whether a proffered group is particularized sufficiently, is a legal matter that this court reviews de novo. So, the court need not remand in order to determine whether the group proffered is a particularized social group. Now, of course... Agreed. I'm talking about social distinction. I'm sorry. Oh, your honor, I believe the social distinction point is also a legal determination, whether there was effectively an application of the standard to the information presented. This court certainly has the ability to look at that de novo as well. Your honor, also considering in this case, we've discussed, I believe, two of the three elements. The third one is this immutability. Mr. Herrera-Martinez has a shared experience with other prosecution witnesses that cannot be returned. We would note that he also statified that element of the task for a particularized social group, and there is no question that there was a prosecution. Mr. Herrera-Martinez was targeted because of his reports to the police and the violence to himself, his family, and his friends. And after the report, the narco traffickers told him they would kill him if he spoke to the police again. Your honor, we also note that Mr. Herrera-Martinez suffered persecution. The IAJ and the board misapplies the law in the Fourth Circuit to undervalue or disregard threats and violence suffered by Mr. Herrera-Martinez and his family and friends. We also note that the IAJ and the board erred by failing to consider pertinent evidence of future persecution. In this case, persecution can be demonstrated either by past persecution or a reasonable fear of future persecution. We note that the record includes threats to Mr. Herrera-Martinez's family, multiple affidavits detailing that, and these affidavits are not simply corroborative of Mr. Herrera-Martinez, although they are in some parts, but they are first-hand testimony of the violence that was brought upon them as a result of Mr. Herrera-Martinez's reports. That's why it's in error in failing to address it. Go ahead, Judge Motz, I'm sorry. So, so did it look, it seems to me what you're talking about now, the IJ actually addressed in its credibility analysis. It talked about a lot of those, you know, affidavits and witness statements and how it found them, you know, either inconsistent in some situations and uncredible or implausible in others. So maybe it was more in the credibility, the credibility analysis, but don't, don't, doesn't the, the IJs, I mean, I know you argue that that was an unreasonable determination, but if we, if you, if we disagree with you on that based on the standard of review, didn't he address, didn't the judge address that, those issues in the credibility analysis? I see I have about a minute remaining, so I will answer the question. Thank you, Your Honor. No, Your Honor, the IJ and the board did not address this point of persecution in the second opinion of dealing with credibility, largely because in that second opinion by the IJ and the board, the court, the agencies were focused on the question of torture, which is related to the cat protection claim. They did not address persecution separately, although obviously much of the evidence is overlapping. The point about persecution and torture, there are separate standards and the fourth circuit has found even the threat of death sufficient to find persecution, whereas evidence of torture requires a bit more under cat. And I'm happy to address any questions about the cat protection claim. Otherwise, I'm also happy to address any further questions on the model. So I'm still, can you tell me what a social group was argued below? I know you weren't counsel. Your Honor, we, I believe they both in the IJ before the board, the particular social group was that of prosecution witnesses. And then there was discussion of the other circuits and how that term has been used, including there was reference to the, I apologize if I'm not 100% on the timing, but the third circuit case, which noted that it did not necessarily have to be a witness in a prosecution at court. So that was what was argued below. And in finding that you would argue Mr. Brera-Martinez is part of that particularized social group. We believe we, the court needs to look at the specific facts applicable to him, that he reported to the police, that he was outed by the police and then targeted as a result. But he didn't testify. He was not a witness. Correct, Your Honor. There was no... You don't rely on, do you see where I'm going? One could still conclude that prosecution witnesses are a particular social group and that your client did not fit within that group. Your Honor, that's... The court rejected the idea that prosecution witnesses were a particular social group. Is that what you're saying? I believe so, Your Honor. The IJ and the board erred by finding that the proper PSG was not sufficient as a particularized social group. So this court could certainly remand in order to for the IJ or the board to determine whether Mr. Herrera-Martinez fits within that legal category. And we certainly have additional evidence for that to be offered. Okay. Any further questions from my colleagues? Okay. We're happy to hear from the government. Good morning, Your Honors. Good morning. Sarah Pergolizzi for the government and may it please the court. I'd like to start, again, as Judge Watts pointed out in questioning the petitioner, with the adverse credibility determination, which is dispositive in this case. Importantly, because as we acknowledged in our brief, an adverse credibility determination can be determinative in a withholding claim, provided there is not objective corroborating evidence that otherwise makes the applicant's burden of proof. And here in this case, the petitioner has failed to point to compelling record evidence, both that the adverse credibility determination is not supported, and that the other objective record evidence in this case could otherwise rehabilitate his testimony or independently meet his burden of proof. And in the- Counsel, can you help me kind of at the outset understand why this is not a Chenery problem? Your argument about credibility seems to be saying, if petitioner's not credible, then there's no evidence that he, any of this happened, right? That he's a member of this PSG. There's no evidence he's a member of this group because we don't have reliable evidence that, you know, he was actually threatened and went to police and all that. But the BIA didn't rule on the grounds that he's not a member. The BIA said, prosecution witness, as it's been defined in front of the board, is not a particular social group because it's not particular. That's a different ground than the one you're advancing in front of us. And we're only allowed to review the ground that the agency ruled upon. So why, why is this not a Chenery problem for us? Your Honor, I have two related responses to that question, which is a good one. First of all, that because this is a strange procedural case and that we have two immigration judge decisions and two board decisions, I would note that the through line does exist, that there were credibility concerns, even in the immigration judge's original decision regarding withholding and cap. The immigration judge noted in the decision at the outset of The board then again, as you noted, absolutely affirmed the withholding merits decision, but also remanded so that the agency could consider if necessary, the merits of cap and also consider credibility. The immigration judge in their second decision, incorporated all the findings from the original decision at the outset. And so we would argue that that incorporation also includes the credibility concerns, which are certainly relevant to the withholding claim as well as the cap. And so relatedly, my second response is that even if the immigration judge was not clear that the adverse credibility covered the withholding claim as well, that remanding for consideration of the withholding claim would be futile in light of this credibility determination that is supported by substantial evidence. Yeah, I get what you're saying that this is not this strikes me as different than the cases where we've said, you know, the board has already said how it would come out on a different issue, or it's factual findings on one ultimately doom another we, we can't put ourselves in place the board and say, well, this is how it would have ruled if, if it had thought to have an alternative ruling. The board ruled on particularity. It didn't rule on whether he's a member of the PSG or not. And I'm not clear that we can just substitute any other, you know, ground for denial that we think would fit. I understand that concern, Your Honor. But I would point again to the extent of the immigration judges adverse credibility determination to the extent that with respect to cat, the immigration judge, or explicitly with respect to cat, the immigration the petitioner's claim that he was threatened and harmed and also about the facts that he claimed informed his continued fear of returning to Honduras. And all of those things are certainly relative and arguably dispositive of his withholding claim as well as his cat claim. But again, I understand why did you why did you not brief the grounds for the board's decision? At the outset, the withholding, the adverse credibility seemed like a certainly a strong and supported decision. You know what it looked to me like is that you agreed with that part. That you agreed with the appellant's argument about the particular social group. So you weren't ready to, as the United States suggests that they were wrong. That's what it looks like. I think most frankly, the particularity issue, especially in this circuit has been in flux in the course of this briefing, right? Ayala had very recently come out, and we were still grappling with how to deal with the court's new case law about how it would analyze particularity. You don't have to I'm not asking for your strategy. I don't mean to be, you know, asking to peek behind the curtain. I just, it perplexes me that the board ruled on one thing, one part of a three part test, and the government is not arguing that part. Now, you're the appellee and, you know, to respect the board, we should review what the board did. So I'm not ready to say that, you know, you could waive it, or that you forfeited it. Although you did. But, you know, we have to review what the board did, whether you bothered to brief it or not. But I just want to flag that, you know, it's fine if you think credibility is a stronger argument. But I think it would behoove the United States to brief the grounds that were relied upon below when it knows that we are constrained to review those grounds. I understand your honor completely. And that is taken with taken very serious. I take it very seriously. But again, I would just stress that even at the state stage, we made clear that our position was that this adverse credibility determination covers withholding and cat and that at least there is an arguable basis to find that the immigration judge in their second decision reincorporated the credibility concerns and that at least the structure of the immigration judges second decision is that credibility is addressed fully first, and then the how credibility relates to the cat finding is then addressed separately. And so at least, again, that there is an arguable path to say that this is covered, covered withholding as well. So counsel, understanding that position, moving to the issue that the board did rule on with respect to withholding, do you contest the decision that prosecution witnesses, the category argued below, was not particular? No, no, we would also defend that decision, but I do acknowledge that we didn't brief it. But I would just note that I do disagree with petitioners contention that social distinction is a legal question as well. It is very classically a factual question, as is as Judge Mott's pointed out, whether the petitioner is a member of their proposed group. And so if this court were to disagree that adverse credibility covers the withholding, and regardless of what this court decides on particularity, then the continued cognizability of that proposed group would need to go back to the agency to make necessary fact finding with regard to those other factors. Counsel, could you cite for me a case in which a court has held has given an adverse credibility holding the scope that you want us to give this one? I mean, I just I've never seen this argument before in 20 some years of doing this. I'm sorry, Your Honor. I found in my research, I certainly found cases where a decision was denied on credibility grounds alone. If you're asking about whether credibility can be dispositive withholding at all, not regarding sort of the scope of what the agency found, then I did find cases saying that that I cited in the brief. But also, I did find cases that did what I didn't quite understand your answer, where the denial of credibility was controlling of withholding claim entirely, or the finding that there was no credible. Yeah, there was a particular social group and there were other claims. It wasn't. I see what you're saying. I don't know. Right, right, right. I see what you're saying. And I'm not sure if I looked specifically for that question. And I see you roll your eyes. But what I'm trying to say is that often cases aren't decided on that many separate dispositive grounds. And so an adverse credibility determination is often determinative because it's the only finding found. But I see what you're saying. Well, are you familiar with cases in which there's been an adverse credibility finding, and yet the board has gone on to discuss other things and our opinions then discuss other things like a particular social group? Well, again, I didn't find a lot of those. But I would like to point to Ilunga as instructive of a case that is like that, and that I think is quite distinguishable from this case. I can't remember if the court disagreed with the credibility determination explicitly, but they also noted that there was excuse me, direct, corroborative, objective evidence of past persecution that required remand. And the kinds of evidence that Ilunga did present are very unlike the kinds of corroborative evidence that Herrera presented in his case. Namely, Ilunga had a doctor's report from the US concluding that his injuries were consistent with his claim that he experienced torture. He had a membership card confirming his membership in a minority political party. And he submitted country conditions evidence that was objective and indicated that minority political parties were often targeted. In this case, aside from Herrera's testimony about his past experiences, he has letters from interested family members, as Judge Quattlebaum pointed out, that are not necessarily reliable and independently capable of meeting his burden of proof. And he has generalized country conditions evidence that gang violence is prevalent in Honduras and endemic across society. And so again, even addressing sort of the alternative merits of this case, there isn't sufficient evidence to support the petitioner's contentions that this social group is, as a matter of law, cognizable, or that the petitioner, even if the court were to agree about that, remand would be necessary for the agency to determine other elements that weren't addressed, such as nexus and the likelihood of future harm. But the government isn't arguing that. Right, right. I would also briefly like to address the CAT, if the court will allow me. As we argued in our brief, again, the adverse credibility determination is certainly more explicitly applicable to the CAT finding. And the petitioner has failed to really point to a solid argument against the agency's that adverse credibility weighs heavily against his ability to meet his burden for CAT. It wasn't the sole determination that the agency rested the CAT denial on, but it certainly is something that is important. If you can't tell what happened to someone, then it is very difficult to ascertain whether they face a particularized risk of torture, which is required under the regulations. Counsel, if I could ask a question about the CAT issue, and particularly the final board decision. Is it the government's position that the IJ's analysis and findings concerning acquiescence and participation, or lack thereof, are incorporated and adopted by the board decision? Um, we argued both. But again, it would depend on how, how the court is going will agree with whether the court agrees with our reading of the agency decisions. Essentially, again, there is that through line in the sense that the immigration judge in his second in her second decision, incorporated those alternative merits findings with respect to the CAT finding and the adopt that portion. It addressed primarily the credibility and the and then the related failure to meet the burden of proof independently. So that is our main argument that that finding is supported by substantial evidence. Okay. I don't think we have any further questions. Do we? Okay.  Have further argument. I don't think you your honors. Okay, do we have any rebuttal? Yes, your honor, if I may. Your honors, may it please the court on rebuttal, I have three brief points. The first being that the credibility ruling is not primitive of withholding of removal. As I've noted before, the same person's older case from this court, well, but still went on to discuss whether there were other grounds for relief, which is what this court must do. We would argue in this case. Additionally, with respect to the particularization or the particularity point that the BIA address, we would ask the court to find in accordance with, I believe, the third circuit, the second circuit, and as well as been suggested by fourth circuit opinion, that individuals who assist the police, whether it be by providing testimony, giving some type of report and are then made public should be protected as a particularized social group. They are sufficiently particular in that the kind of the second step of being a public helps limit them in the public or delimit them in the law. So, counsel, but how do we square that with the particular social group that you argued below? I mean, I get the argument that someone who files a statement and is made public might could satisfy the particularity requirements. You're putting some limiting facts in there. And maybe Crispin is the answer that it, you know, essentially has already decided it. Maybe it doesn't. There's been some discussion over that. But without you putting those other facts about being made public and about, you know, filing a complaint, yeah, I'm just having trouble understanding what prosecution witness, what's in and out as far as prosecution witnesses go. Your Honor, respectfully, those facts were before the IJ and have been since the beginning. The IJ discussed with respect to Mr. Herrera-Martinez. Sure. I'm sorry, but facts before the immigration judge is a different issue than what the argued below that prosecution witnesses with a particular social group. And that may or may not be problematic, but it seems to me like you think it might be because you keep adding to it. And I'm sorry, go ahead. No, I apologize, but it's certainly not the impression I mean to give. We believe prosecution witnesses are appropriate, particularized social group, one that is supported by the law and that the court can find with a de novo review of the And just to point out, you did your client defined prosecution witness for the board as Honduran citizens who make reports to the police about the unlawful activities of narco traffickers. So that's the PSG that we have to evaluate. We can't evaluate a new one that you are talking about on appeal in front of us. We have to evaluate what the BIA evaluated. So tell me why that particular social group is particular enough. Your Honor, it's particular enough in the same sense that I believe it was Judge Floyd mentioned in his concurrence for the BIA. To the extent that prosecution witnesses individuals who make these reports and who are then called into court or made public in a sense. But this what this group that you articulated in front of the board could include anonymous tipsters, folks who call in an anonymous tip on the phone to the police about narco traffickers, and never made public. Your Honor, with respect, the Seventh Circuit and the Second Circuit have found that similar circumstances are sufficient to make a particular social group. We certainly don't need the court to find that here as there was this as other circuits have found. Not under the board's HLSA decision, they pointed out that a group that has all these indeterminacies, including anonymity would not be particular. Yes, Your Honor, that is what HLSA says. But as I mentioned before, we have some disagreement with HLSA. And we would be happy to address that on remand to the extent necessary. Your Honor, I see my time is about to expire, but I would also, in this brief time, like to point the court to the uncontradicted, firsthand, legally significant affidavits that the board and the IJ failed to consider. I'd be happy to go into those in detail, but there were multiple that went into the witnesses' individual experience and not simply to our own. I'm sorry, what did this evidence do? I couldn't hear you. I apologize, Your Honor. With respect to the evidence, it was independent. A large number of it was affidavits by Mr. Herrera-Martinez's friends and family. It spoke not only to corroborate Mr. Herrera-Martinez's experience, but also about their own experiences in being threatened by the narco traffickers. It points to the record, page 615, Mr. Wilmer Martinez. He gave information about how he was harmed and threatened with an AK-47 by the same narco traffickers that beat Mr. Herrera-Martinez. Additionally, Mr. Herrera-Martinez's former partner, but she is independent as they are no longer together. She has no, essentially, dog in this fight. She wants as far away from Mr. Herrera-Martinez as possible due to the threat he has brought to her and her children. Can I go back to, sorry, to the particularized social group one more time? So, you are arguing in front of us that there was publicity connected with what your client did, right? Yes, Your Honor. But you are saying that there need not be. Am I right? Yes, Your Honor. Social group. That's correct. Based on the cases I cited previously. With that, Your Honor, thank you for your time. Well, just a minute. The argument that was made below was that this person was in a particularized social group. And what was that particularized social group that was argued below? Your Honor, I apologize. I don't have the specific language as quoted in page 21 of our brief, but it related to the reports made specifically to the police. And then, I believe, there was targeting following the reporting. I believe JA-131 has your brief to the BIA, if I'm looking at that correctly, but don't hold me to that. As we noted, the publicity is certainly not required, especially under the Second Circuit's case that I cited. But we believe even here, we have more than that, which would allow Mr. Herrera-Martinez to be part of a particularized social group. For those reasons, we ask the court to vacate the lower opinions and then to remand, if necessary, or to grant relief, and then to return Mr. Herrera-Martinez to the United States for that. Thank you. Thank you very much. Thank you, counsel, for your arguments. We'll go to our third case.
judges: Diana Gribbon Motz, A. Marvin Quattlebaum Jr., Allison J. Rushing